Good morning, Your Honors. Alexandra Yates on behalf of Martin Diamond. Your Honors, the federal DNA statute may not be a model of precision, but it is actually quite simple and coherent under our statutory construction, which follows from the plain language of the text and gives each provision a clear, distinct meaning with nothing rendered superfluous. By contrast, the government asks this Court to read four words from individuals in custody out of the statute entirely with no basis for doing so in the text and also creating serious constitutional problems and rendering subsection a2 essentially meaningless. Now under our construction, the statute breaks down into three relevant parts. Subsection a1b says that anyone convicted of a qualifying federal offense who is in DOP custody must be DNA tested. Subsection a2 says that anyone convicted of a qualifying federal offense who is not in DOP custody but instead is on probation, parole, or supervised release must also be DNA tested. And then subsection a1a says that all other defendants, in other words, those who have not been convicted of a qualifying federal offense who are in custody, whether they've been arrested, are facing federal charges, or have been convicted of some other nonqualifying federal offense may be DNA tested. And your client escapes all of this because? Because he has never been in custody. He was issued a citation ticket, appeared in court, was never held, was never arrested, was never even fingerprinted, was sentenced to a term of probation, and was not convicted of a qualifying federal offense under the definition in subsection d of the statute. And so it's your position, if he were arrested by a criminal complaint, we wouldn't be here today, right? If he was arrested under a criminal complaint, this would be a moot issue, right? Well, we may have a constitutional challenge in that case, but it's certainly not the case presented here. And there's no reason to read the statute, to read out four words, to create those constitutional problems. With respect to the crime of violence issue, there is no ambiguity in the statute. Congress said that crimes of violence are qualifying federal offenses and said that crimes of violence are offenses that meet 18 U.S.C. section 16's definition. Section 16 had an established meaning, an established practice for interpreting it, and that's under Taylor. At the time Congress inserted it into the DNA statute, Congress simply couldn't have been clearer. What are we to make of the government's contention that because the Attorney General is entitled to promulgate regulations in connection with the earlier part of the statute, that the Attorney General is also entitled to construe section 16? Well, I think the Attorney General is entitled to and expected to issue regulations listing crimes of violence, but I don't think that the Attorney General gets to reinterpret what 18 U.S.C. section 16 means. But as determined by the Attorney General language that the government cites to, as the Second Circuit recognized in Peterson and the Third Circuit in Cooper, doesn't suddenly render ambiguous what is a very plain and unambiguous provision of the statute. Do we have some cases that indicate that we owe no deference to the Attorney General's construction of section 16? Absolutely, Your Honor. Most prominently Singh v. Ashcroft, which is cited in our briefs. These cases are typically in the immigration context, where, like here, we have a kind of quasi-criminal but not criminal statute with a cross-reference to 18 U.S.C. section 16 within it. And in these cases, this Court has held that there is no deference to the Attorney General's interpretation because 18 U.S.C. section 16 is a criminal statute. And in fact, in Singh v. Ashcroft, after saying that, the Court goes on to interpret 18 U.S.C. section 16 to exclude the least offensive touching offenses such as the offense in this case. And unless the Court has other questions at this time. Pretty straightforward. Your position is pretty straightforward. We believe so, Your Honor. You want to reserve the rest of your time and respond to the government? Thank you, Your Honor. That's fine. We'll hear from the government. Good morning, Your Honors. Mark Yohalam on behalf of the United States. Unlike Ms. Yates, the government's position is that the Court needs to start with the text of section 1A.1, which includes no limitation on DNA being taken from defendants who are incarcerated. Unlike 1A.1b, which does include such a limitation for people who are in BOP custody. It expressly says defendants who are in BOP custody, whereas 1A.1a says the Attorney General may collect DNA samples from individuals who are arrested, facing charges, or convicted under the authority of the United States. But the Attorney General's promulgated regulations, has he not, to construe that section? Yes, he has, Your Honor. And don't those regulations expressly require the person to be in custody? No, they do not, Your Honor. They say that anyone who has been convicted is subject to having their DNA collected under this provision. Regardless of whether or not they have been or are in custody? Yes, I believe so, Your Honor. You know, you don't sound real certain. You believe so? You think? I can look at the provision now, but I certainly don't remember a defendant ever raising that argument. And when I looked at the provision in drafting the brief, that was not my impression of how it read. I'm taking a little bit of back, because, you know, I assume the question is coming from — Well, the statute talks about the Attorney General may, as prescribed by the Attorney General, end regulation, and then it goes on to talk about it. I mean, how could we not inquire whether there's a regulation? Yes, and the government cited the relevant regulation in the brief. And if I can have one moment, Your Honor, just to confirm my impression of this. When you come to the Ninth Circuit, get ready to be taken aback. The relevant regulation is 28 CFR 28.12, which says, any agency of the United States that arrests, detains, or supervises individuals may collect DNA samples from individuals who are arrested, facing charges, or convicted of any Federal offense. It expressly lists the probation office as such an agency, and when the court, the administrative office asked whether the probation office should be accepted from that, the Attorney General responded no. So the regulation, as was my recollection, does not contain any restriction on it being defendants who are in custody. But isn't the problem that this defendant was never arrested? He was issued a citation, which did not result in an arrest. Isn't that the problem? It's not a problem, Your Honor, because he was convicted. So there are three ways in which a defendant falls within this. One is to be arrested, one is to be facing charges, and the third is to be convicted. There is no question that he was convicted here. Likewise, there is no question that the probation office is an agency that supervises, arrests, and detains individuals. So for that reason, if we were looking at A1A in isolation, if the court would imagine that A1A were a freestanding statute that was simply called collection of DNA, I think there would be no dispute that A1A clearly covers defendant. The entirety of defendant's argument rests on the subheading of A1, which is individuals in custody. Well, it sounds like the government's argument brings us squarely to the constitutional issue then. So far as I know, and I appreciate your correcting me if I'm mistaken, there is no case law that says that a person convicted of a misdemeanor is required under the Constitution to give a DNA sample. Am I mistaken in that? You are not mistaken, Your Honor, although let me first say, obviously the Constitution would not require someone to give a DNA sample. The question is whether the collection of a DNA sample is reasonable under all the circumstances under the Constitution. Now, where do you get that from? That is the Kincaid, Crecel, and Poole. Poole, of course, is on en banc. But Crecel and Kincaid, Kincaid itself was an en banc decision. But those involve very different factual situations, do they not? Not very different, Your Honor. They did involve convicted felons, but they involved convicted felons who were not in custody. They were on supervised release. But they had been in custody, and they had been arrested and indicted and the like, right? They had been, but the watershed events that the court emphasized again and again in those decisions, and indeed even the dissent in Poole emphasized, was not custody. It was conviction. And I can read from Judge Schroeder's dissent in Poole. Now, the reason why, normally I would not cite a dissent, but that is the. We do it all the time. But, you know, obviously the dissent is the most favorable position that has been staked out for defendant here. The majority would have gone even farther. But even Judge Schroeder says, is because a conviction is what distinguishes parolees, probationers, and those on supervised release from members of the general public, that our court has squarely held that warrantless searches and seizures violate pretrial detainees. Okay, well, let's take Judge Schroeder's point absolutely to the limit. The reality is we still don't have a case that meets your fact. You may be absolutely right as a matter of constitutional law that that's where we should go. But we haven't gotten there yet, have we? No. Okay. Well, since we haven't gotten there, and we're dealing with a statute that if we take the government's requires us to engage in a constitutional construction of a statute. Don't we have to construe the statute in a way that avoids the constitutional issue? I don't think so, Your Honor, for several reasons. One is it does not avoid the constitutional issue. If we find that this is not a qualifying federal offense, of course it avoids the constitutional issue. It doesn't because the construction doesn't avoid it. This Court can obviously avoid the issue in this case by saying that the statute doesn't reach this. Isn't that what we're supposed to decide, is cases and controversies? No. Yes, that is true, Your Honor, but that is not how the doctrine of constitutional avoidance works with respect to statutory construction. There, if there is a grave constitutional doubt that can be resolved by a certain statutory construction, the Court should take that into consideration if there are two permissible readings in the statute. So you're saying there is a constitutional issue. We should decide it, and we should decide it in the way that the government decides, right? No, that's not what I'm saying, Your Honor. First of all, the defendant has never said it's unconstitutional to take his DNA. He didn't raise that argument below. He didn't raise it in this Court. What he has said is that the construction the government is urging raises constitutional doubts. That is not so. What raises constitutional doubts most saliently is the pretrial collection of DNA from a misdemeanor. That is someone who has not had a probable cause determination by a magistrate or by a grand jury, someone who has not been convicted and has simply been arrested. Defendant's construction doesn't avoid that problem because if he had been arrested, and make no mistake, he could have been arrested. There's no question that there was sufficient, you know, instead of picketing him, they could have gone and arrested him under the Atwater decision of the Supreme Court, where there's probable cause to believe that a crime has been committed, even if it's a traffic violation. The officer is permitted to make an arrest, so he could have been arrested, in which case defendant's construction says his DNA could have been taken. There they say they would have raised a constitutional argument, but that is the most problematic constitutional area. Their construction doesn't avoid it. The only thing their construction avoids is someone who is convicted of a misdemeanor offense but is never arrested, never, you know, never held in custody because they were released on bond, and immediately put on probation. That is a much lesser concern than the pretrial misdemeanor. So are we to understand that the government is taking the position that we should decide this case based upon A1? Don't even get to 2 or B? Is that correct? I think it can be decided either on A1A or on A2 and D. But then you get to the qualifying federal conviction issue. And let's just say hypothetically that at least I don't buy the idea that what this guy did, kissing this woman on the cheek involuntarily, constituted a violent offense. I mean, some people may view it that way, but in Washington in particular. But as far as what we're dealing with here, are you not saying A1 is what you want us to go on? Because otherwise we get into that area? Your Honor, I think it is easiest to resolve it on A1A. The reason why is because absent the subheading, there is nothing to restrict A1A to people who are in prison. And even with the subheading, custody has been construed routinely to include probation, parole, and supervised release. And so I think the easiest route is to do the A1A route. But we have to. If we do A1A, correct me if I'm wrong, then we have to look at the regulations promulgated by the Attorney General to go that route. Isn't that correct? Because this is permissive to the Attorney General. The Attorney General may, by regulation, do these things. So that's really what we're looking at is the Attorney General's regulation, right? And whether that regulation is reasonable, whether it's manifestly contrary to the statute or arbitrary or capricious. But do you agree? Whatever that regulation says, that's what you're bound by. If we go with A1A. Yes. And I note, Your Honor, that the defendant has never argued that the regulation doesn't permit his collection of his DNA. So that argument is not before the court. I would submit that it's been waived. It wasn't raised in his opening or his reply brief. It wasn't raised below. I think the general waiver doctrine is that unless it's raised somewhere at some time, then the court. Don't we have discretion as an appellate court, though? If the statute in question has been raised by both parties and discussed by both parties and it refers to a regulation, that we have the ability to consider that regulation. Yes, Your Honor. Waiver is a prudential doctrine, not a jurisdictional one. Right. But the precedence of this Court, I think the regulation supports the collection of his DNA. So I have no problem with the Court considering it. So you wholeheartedly embrace the regulation, right? Yes. It loves you. You love it. Yes. I didn't draft it. Let me say this. I like the regulation more than the statute. The statute, I think, like many things that are produced over time, has these oddities about it. And I want to turn quickly to the Section D argument to illuminate some of those and explain why defendant's position there is wrong. And hopefully maybe I can persuade Judge Smith why defendant's crime here is a crime of violence. I'm just a simple fellow. You just work with me on it. The question is whether it was manifestly contrary to the statute for the Attorney General to determine that assault, simple assault, is a crime of violence. When Congress was passing Section 16, the legislative history makes unmistakably clear that Congress believed that simple assault and battery under the very statute which defendant was convicted of was a crime of violence. That's clear in the House and the Senate reports. Can I just get back for one second to A1A? Absolutely, Your Honor. The regulation, 28.12, talks about either that the Bureau of Prisons will do this. Of course, he's not with the Bureau of Prisons. But it also talks about any agency of the United States who arrests or detains somebody. Well, that didn't happen here either. So how does this regulation cover this defendant? To respect, Your Honor, the probation office does arrest and detain individuals. Did it do that in this case? No, but the ---- Well, how is he covered? Well, first, the full regulation says any agency that arrests or detains or supervises individuals. Plural. Individuals. Yes. The probation office does supervise more than one individual. It doesn't say any probation officer who at that instant is supervising multiple individuals. It's talking about an agency. The probation office, its primary function is to supervise individuals. The probation office is part of the U.S. court system, is it not? Yes. It's not with the Attorney General's office. So how could it be the same entity? It is an agency of the United States. It's created under a different branch. But the ---- That's correct, Your Honor. But the statute and the regulation both speak of agencies of the United States. Well, I would submit that the courts are not an agency of the United States. They are a branch of the United States. I agree, Your Honor. However, I would say that the probation office is an agency of the United States. And I will say I've never ---- this argument, again, has not been raised by a defendant. And in both Kincaid and Cresel, the DNA was being collected by a probation officer. And there was never ---- They'd been convicted and previously been in the custody of the Bureau of Prisons, which is a different issue, right? But the DNA was being collected by the probation office. So, but ---- Is there a possibility that Congress maybe didn't draft this well? This would be an unusual circumstance. I actually don't think it's that unusual a circumstance for Congress to say anyone who's in the criminal justice system, at whatever stage, will be ---- have his DNA collected by the relevant agency involved at that stage. I realize my time is up. If I can briefly talk about subsection D. Go ahead. As I said initially, when Congress passed section 16, it believed that defendant's offense was a crime of violence. So I think on that basis alone, it would be strange to say that the attorney general acted manifestly contrary to Congress' intent in then promulgating that regulation to say that that offense was covered. Second, I would say that the categorical approach that defendant urges really has no place here. And I think the Johnson case is actually very helpful for the government, although defendant relies upon it. In Johnson, the Supreme Court was interpreting ACCA and said there that simple assault actually ---- that the level of force involved in simple assault would actually fall within a crime of violence, but for the fact that ACCA only extended to felonies. But because ACCA only extended to felonies, the court had to find a higher level of violence necessary because ACCA was only meant to cover felonies and not misdemeanors like simple assault. So defendant is now asking to import that rule, which was made precisely to exclude misdemeanors, into a provision that's only function is to cover misdemeanor. Kennedy. You know, as I was preparing this case this morning, I couldn't help but think of Justice Scalia's language in his recent dissent in the crime of violence case involving police chases, where he said it's time for the courts to stop honoring fuzzy language by Congress, which they expect the courts to sort out. We're kind of in that position. I read that opinion as well, Your Honor. How do you feel about Justice Scalia's language? I think it's very evocative. Personally, how do you feel about it? I thought that referring to the majority opinion as tutti frutti was a little bit much, but I thought it's a very ---- it's an evocative opinion. I will note that this is the effect that defendant's construction of subsection D will have. Subsection D has three parts. The first is any felony. That will survive. The second part is sexual offenses under Chapter 119A. That has no effect already because all those are felonies. The next one is any crime of violence. The only crime of violence that is not a felony, potentially, is simple assault. So if you say simple assault is not covered by that section, now D3 is also gone. D4 says any conspiracy to commit 1 through 3. A conspiracy to commit a felony is also a felony. So that's gone. So the consequence of defendant's reading is that subsection D has now been reduced simply to any felony. I think that, you know, to the extent that canon against constructions that render sections superfluous has any effect here, it must be against defendant's construction, not in favor of it. Thank you, counsel. We appreciate your argument. We'll hear what the other side has to say in response. There you go. The issue is joined. Your Honor, to speak to the regulation, first of all, the reason that this wasn't discussed in magistrate court is because it wasn't raised by the government as a basis for the statute. It wasn't. When you say it wasn't raised, what wasn't raised? Subsection A1A at all. Okay. And in fact, the Attorney General, through the probation office, did not even exercise its supposed discretion to DNA test Mr. Diamond under subsection A1A. The probation officer actually made the first, the initial request before the regulations even went into effect. So you take the position that under the facts of this case, we need not consider A1A either because that's not what happened here? Yes. Not only do we think it is technically waived as a prudential matter, but also the discretion wasn't actually exercised in this case. And it makes sense that the discretion wasn't exercised in this case, aside from our belief that the statute doesn't authorize it. But even under the regulation, which might allow it, there is an exception for people who are not fingerprinted. Mr. Diamond was not even fingerprinted. It seems that subsection A1A, which originally talked in terms of simply arrests and later the facing charges or convicted was added in there, is perhaps supposed to be some sort of booking provision. And this makes sense, also reading it from persons in custody, that when you come into custody and they take your fingerprints, they also DNA test you. I'm not saying there aren't necessarily possibly problems with that, but that seems to somewhat be the history of it. That seems to be what 28.12 may be indicating when it says there are exceptions for people who aren't fingerprinted. And that also in some ways flows with the idea of custody being a limiting principle because very typically when someone is brought into custody, that is when they're identifying information is taken. And, of course, there's a long line of cases saying that defendants have a diminished expectation of privacy when they're in custody. And we did also mention this in our briefs when we questioned whether the probation office does have authority under the regulations and also mentioned the exception in Subsection B of the regulation for people who aren't fingerprinted, with Mr. Diamond never having been printed. I do also want to go back to the point Judge Smith made about this is a misdemeanor case, and I don't want that to be lost here. The case is talking about a reduced expectation of privacy on one side and the two are convicted of felonies and typically also have at least at some point been in custody. And those two facts have significant effects on a citizen's expectations of privacy and also the government's interests. A felony conviction really is a sea change in someone's life. Right. In the misdemeanor plea, the colloquy, had they admitted or had your client admitted that he used force or he grabbed her or he did something more than just kiss her on the face, that would have interjected a new factor into the case, wouldn't it? Yes, it certainly would have. But that was not an element of the offense, correct? As in the colloquy of the magistrate judge? That would have been a fact that under the modified categorical approach.  That would change the landscape. Of course, he vehemently objected to any such fact. But that would change the landscape with respect to the A2 and D analysis. I don't believe so with respect to the A1A analysis. Did anybody ever take a mug shot of your client? No. He was not photographed. Did anybody ever fingerprint your client? No. He was issued a citation ticket. And I think this is important in terms of what an individual's reasonable expectation of privacy would be. He was issued a citation ticket at his place of work, Vandenberg Air Force Base, where he's worked as a federal employee for 25 years, and told to appear in court. He appeared in court. He was put over to another appearance on an OR, no property posted, no money posted, not taken into custody for any sort of fingerprinting, never handcuffed, and eventually was placed on probation, which he has complied with fully, except for the, obviously, debate here about whether he's subject to DNA testing. I think a person, a reasonable person in that situation who hasn't been fingerprinted, who's never been taken into custody, and who has been put on probation for nonviolent misdemeanor, would very well find it an infringement of their privacy rights and liberty rights to be DNA tested, perhaps more so even than someone who is detained pretrial for a felony. But realistically here, I mean, you're raising to some degree the constitutional arguments that we would make if that's what we were considering. But if I understand the primary thrust of the defendant's argument, it is that this statute, however inarticulately drafted, doesn't cover his factual situation. Is that correct? Absolutely, Your Honor. And these messy constitutional issues don't need to be avoided, don't need to be dealt with, and in fact should not be dealt with under the doctrine of constitutional avoidance, and also under the line of cases that says we do not give Chevron deference to an attorney general regulation that raises grave constitutional doubts. The government interpretation which raises these constitutional problems reads several words out of the statute. There's just no reason to read the statute in that way, unless the Court has additional questions. No, but I have a question for the government. Thank you, counsel. Thank you. What's your response to the argument that you're asking us to deal with something that never happened? A1A isn't what happened in this case. There was never that kind of discretion exercise, so it's not even factually a part of the basis for this case. Do you have any response to that? I believe that the regulations pursuant to A1A were promulgated prior to the violation, although maybe Ms. Yates can correct me on that. And so the discretion did exist prior to the violation. And if it didn't? If you're wrong? If A1A did not exist, if the regulations pursuant to A1A post-date the violation and there was no prior regulation promulgated, then I think there was no authority under that provision. Even if there was authority, if I understood correctly, what Ms. Yates said is that you didn't proceed under that, so we shouldn't be considering it. Is that correct? I think that's a correct statement of her argument. I mean, what's the government's position? No, I don't think that's correct. I don't think that a probation officer needs to say, I am now going to collect your DNA. Does the government proceed under A1A in this case? The probation office asked to collect his DNA. Right. In doing so, I do not believe the probation office has to say, and I am doing so pursuant to my authority under XYZ. And in the record, I don't believe there's any indication one way or another what the probation officer said his authority was. This is getting a little messy, but how do we find out whether the regulation had been or had not been yet promulgated? Counsel said it had not yet been promulgated. There was a promulgation date. I'm happy to write a very short one-page brief to the Court on this, but the regulation will have a date that it was promulgated on. We have a hearing. We look at the date of the violation hearing, which was the date of, you know, when he was found to be. Counsel, do you have the date of the promulgation of the regulation? I do. You want to show it to the government? Let's turn this into a free-for-all here. What I can represent is that the first initial request for DNA testing of Mr. Dimon was made on July 14, 2008. The regulations then went into effect on January 9, 2009. The second request of Mr. Dimon came after that on March 16, 2009, but both requests were made, and this is at Excerpt of Record 195, I believe, in the violation report. They were both made under the crime of violence, the subsection D, subsection A2 of D. This was never raised in magistrate court by the probation officer. It was not relied on by the magistrate judge in opposing the condition. It wasn't until appeal in district court. What about the district court? Did the district court make any reference to the A1A? The district court, what the district court said was very brief. I think the best interpretation of what the district court said was that it was referring to A1A. It simply said, yes, all persons arrested or convicted can be DNA tested, period, end of case. So it seems to have bought into the government's argument on appeal, but I don't think that the district court's opinion, with all due respect to the district court, has any relevance or precedential value. Do you think that Judge Reel was not overly explicatory? I think for once and only, Judge Reel was not. This would be unusual. Sorry. Very unusual. Yes. All right. Thank you both. We appreciate your briefing and your argument. We'll try to sort it out as quickly as we can. The case argued is submitted, and we'll take a brief recess to reconstitute the panel. All rise.
judges: McNamee, Trott, Smith M.